IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KATHRYN REITZ and<br>BOBBIE MCDONALD,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF MT. JULIET,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 3:08-cv-0728<br>)   Judge Trauger<br>)<br>)<br>)<br>) |

## MEMORANDUM

Pending before the Court is a Motion for Summary Judgment filed by defendant City of Mt. Juliet (Docket No. 48), plaintiff Bobbie McDonald's response (Docket No. 58), and the defendant's reply (Docket No. 61).[1] For the reasons discussed below, the motion will be granted.

## FACTS

Plaintiff Bobbie McDonald worked for defendant City of Mt. Juliet (the "City") as a building code inspector from 2004 to 2009.[2] The plaintiff worked alongside three other building

---

[1] The defendant's motion relates only to McDonald, not to plaintiff Kathryn Reitz. Accordingly, the term "plaintiff" in this Memorandum will refer only to McDonald.

[2] Unless otherwise noted, the facts are drawn from the defendant's Statement of Material Facts (Docket No. 54), the plaintiff's response (Docket No. 59), and related affidavits and exhibits. Although facts are drawn from submissions made by both parties, on a motion for summary judgment, all inferences are drawn in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

1

inspectors, all of whom were male. Their supervisor was Gary Branham, who reported to Public Works Director Hatton Wright and Assistant Public Works Director Shannon Joyner.

The building inspectors were responsible for visiting construction sites, inspecting them for compliance with the applicable building codes, and passing or failing the sites. This sometimes required the inspectors to interpret the relevant codes. Such interpretations were routinely brought to Branham's attention, who then agreed or disagreed with the inspector's initial interpretation. The plaintiff became frustrated by the inconsistency of this process. This led to disputes over the application of building codes; for example, the plaintiff had arguments with Branham and Joyner over her interpretation of the Americans with Disabilities Act ("ADA") and whether the City should enforce ADA compliance. Because of these disputes, Wright would sometimes "cuss" at her because she "was too good at [her] job and [she] was too thorough." (Docket No. 58, Ex. 1 at 355-56.) The plaintiff testified that Branham challenged her code interpretations more frequently than he challenged the male building inspectors' interpretations. But she also testified that the three male inspectors had similar problems and frustrations with code interpretation and that they had disputes of their own with Branham.

The plaintiff alleges that she faced a hostile sexual environment at work. She occasionally received joke emails containing sexual content, some of which offended her. One time, Branham made comments about a female co-worker's tight pants, and he sometimes made fun of his female secretary for overeating. Also, the plaintiff testified that one of her supervisors once made a female co-worker cry by using demeaning language.

In January 2007, the plaintiff was physically attacked at a construction site by Joe

McDonald (no relation to the plaintiff), a building superintendent for private developer Craig Homes. Joe McDonald was not employed by or affiliated with the City. In response to the attack, Wright issued an immediate order denying all building permits to Craig Homes, and he requested a police radio from the Mt. Juliet police so that the plaintiff could directly contact the police in case of an emergency.

In December 2007, the plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The charge alleged that her supervisor referred to her in disparaging and offensive terms and physically assaulted her. At her deposition for this case, however, the plaintiff testified that the allegations were incorrect and that these actions were actually perpetrated by Joe McDonald. The plaintiff agreed that her lawyer was to blame for this mistake. The EEOC charge alleged that the plaintiff and Branham had an "aggressive, explosive" confrontation when the plaintiff refused to approve a building project that failed to comply with the ADA; it also mentioned her dispute with Joyner on the same topic. Finally, the charge alleged that the plaintiff's male co-workers were sometimes not reprimanded when reprimands were warranted.[3]

Later in December 2007, the same month that she filed the EEOC charge, the plaintiff wrote a note to Branham urging him not to retire: "Gary, you are a great mentor. I appreciate all you do & have taught me. You are a great asset to the City of Mt. Juliet. I hope you stay forever, You make me nervous when you talk about leaving. DON'T GO PLEASE. Merry Christmas."

---

[3] The plaintiff herself was never reprimanded by the City.

3

At some point, the plaintiff underwent medical treatment for neck injuries sustained in the attack by Joe McDonald, causing her to miss a substantial amount of work. The City's insurance carrier denied the plaintiff's workers' compensation claim related to the injuries. Because of this, the City initially charged the days off to the plaintiff's sick time. The City later agreed to restore the sick time, warning the plaintiff that future absences would count against her sick time. The plaintiff filed a second EEOC charge in May 2008, alleging that this handling of sick time was in retaliation for her first EEOC charge. But at her deposition, the plaintiff agreed that the City went "above and beyond" to accommodate her when she was on sick leave. (Docket No. 49, Ex. 1 at 95.) The second EEOC charge also alleged that the City forced her to return to the job site where she was assaulted.

When the plaintiff returned from sick leave, her injuries left her physically unable to perform her building inspector duties. The City placed her on temporary light duty, on the expectation that she would ultimately recover and return to the job. She continued to receive her full salary. The plaintiff filed a third EEOC charge in February 2009, alleging that certain light duty work she performed was retaliatory because it exceeded her medical restrictions. At her deposition, the plaintiff testified that this charge boiled down to her lack of access to time sheets and a computer while working at an animal shelter.

The plaintiff eventually learned that her physical restrictions were permanent and that she would be unable to return to her job as a building inspector. In May 2009, the City terminated her employment.

## **ANALYSIS**

The plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e *et seq.* The defendant has filed a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The plaintiff's response brief states that she is only pursuing claims for hostile work environment and retaliation (*see* Docket No. 58 at 3-9), so the court will address only those two claims.

## I. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the non-moving party fails to make a sufficient showing on an essential element of the

5

case with respect to which he has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the non-moving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the non-moving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the non-moving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 431 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49).

## II.    Title VII Hostile Environment Claim

The plaintiff claims that her supervisors' sexual harassment created a hostile work environment. In response, the defendant argues that she has not shown sufficient evidence of harassment. (Docket No. 61 at 2-4.)

Title VII prohibits conduct that is "'sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Cecil v. Louisville Water Co.*, 301 Fed. Appx. 490, 498 (6th Cir. 2008) (quoting *Meritor Sav. Bank, FSB*

6

*v. Vinson*, 477 U.S. 57, 67 (1986)); *see also* 42 U.S.C.S. § 2000e-2(a)(1) (making it unlawful for an employer to "discriminate against any individual . . . because of such individual's . . . sex."). To establish a prima facie hostile work environment claim, the plaintiff must prove that:

> 1) she is a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based upon her protected status; 4) the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and 5) there is a basis for employer liability.

301 Fed. Appx. at 498 (citing *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008)).

The central issue here is whether the alleged harassment was severe and pervasive enough to create an actionable hostile work environment. The Sixth Circuit recently discussed this requirement:

> In evaluating the severity and pervasiveness of workplace harassment, we consider the totality of the circumstances. Relevant circumstances include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Viewed as a whole, the environment must be both objectively and subjectively offensive, hostile, and abusive. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to" a hostile work environment. Rather, "conduct must be extreme to amount to a change in the terms and conditions of employment." We have consistently rejected any invitation to convert Title VII into a "code of workplace civility."

*Id.* at 499-500 (citations omitted).

To support her allegation of a hostile work environment, the plaintiff cites to four

7

portions of her deposition testimony. (Docket No. 58 at 6.) The plaintiff testified that: (1) she sometimes received sexually explicit emails, including one depicting a female biker in a thong (Docket No. 58, Ex. 1 at 404); (2) on one occasion, Branham discussed the tightness of a female co-worker's pants (*id.* at 408); (3) Branham sometimes made fun of his female secretary for being overweight (*id.*); and (4) either Branham or Wright once made a female co-worker cry by being "demeaning" to her. (*Id.* at 409.) This is the extent of the evidence offered by the plaintiff.[4]

This harassment, most of which was not even directed at the plaintiff, is clearly not enough to sustain a hostile environment claim. First, the plaintiff testified that not all of the emails offended her. (Docket No. 58, Ex. 1 at 404 ("I have had emails offend me, and I have had emails that have not offended me that have been both inappropriate [sic].").) She also, in the midst of the allegedly hostile environment, gave Branham a Christmas card calling him a "great

---

[4] The plaintiff does not explicitly argue that her hostile environment claim is supported by the disputes with her supervisors regarding building code interpretations. The plaintiff's brief does argue, however, that she was treated less favorably than the male inspectors in this respect. (Docket No. 58 at 4.) She also argues that the court cannot decide matters involving "motive" or "intent" at the summary judgment stage. (*Id.* at 2-3.) The court surmises that the plaintiff is attempting to argue that the building code disputes contributed to the hostile environment because they were motivated by her gender.

But the plaintiff offers no evidence that the disputes were gender motivated, other than her own unsupported assertion. (*See* Docket No. 58, Ex. 1 at 47.) "In Title VII actions . . . it is important to distinguish between harassment and discriminatory harassment in order to 'ensure that Title VII does not become a general civility code.'" *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000). The plaintiff testified that her supervisors had disputes not just with her, but also with her male co-workers. (Docket No. 49, Ex. 1 at 41-44, 48.) The plaintiff must introduce *some* evidence, beyond her mere say-so, suggesting that the alleged harassment – which was gender neutral on its face – was gender driven. In this case, as in *Bowman*, "many of the alleged harassing acts cannot be considered in the hostile environment analysis because [the plaintiff] has not shown that the alleged harassment was based upon [gender]." 220 F.3d at 464.

8

mentor" and asking him to not retire. These facts are relevant because the alleged harassment must be subjectively, not just objectively, offensive. *Cecil*, 301 Fed. Appx. at 499 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

Second, the Sixth Circuit has dismissed hostile environment claims involving much more severe harassment. For example, in *Cecil*, the plaintiff's supervisor told her that she "dressed too nice" and that she reminded him of a "dim-witted, overly-dressed" television character, and he wrote derogatory remarks about the plaintiff and other female employees on payroll sheets. 301 Fed. Appx. at 493-94. Other employees told the plaintiff that the water utility field was "no place for a lady," and the defendant's Vice President of Human Resources "told two male co-workers to 'pass it around that [the plaintiff] is easy.'" *Id.* at 493. Despite these and other allegations, the court found that the work environment was not hostile and abusive for Title VII purposes. *Id.* at 500. Similarly, in *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000), a supervisor told dirty jokes in the plaintiff's presence, offered to improve her work evaluation if she performed sexual favors, referred to her once as "Hot Lips," and made comments about her state of dress. Again, this did not support a hostile environment claim. *Id.*; *see also Reed v. Metro. Gov't of Nashville & Davidson County*, 286 Fed. Appx. 251, 253-54 (6th Cir. 2008) (holding that "unsavory mass emails" that were "inappropriate and unprofessional" were insufficient to create a hostile environment).

The plaintiff offers no authority to the contrary. Remarkably, in her response brief, the plaintiff entirely avoids mentioning the on-point cases cited by the defendant. Instead, she cites a number of cases having nothing to do with sexual harassment for the proposition that

9

"reasonableness" is usually a jury question.[5] (Docket No. 58 at 7 n.18-21.) This is simply not relevant to this court's determination of the whether the plaintiff has created a triable issue regarding the existence of a sexually hostile environment.

Accordingly, the court will dismiss the plaintiff's Title VII hostile environment claim.

### III. Title VII Retaliation Claim

The plaintiff also asserts that the City unlawfully retaliated against her for filing the EEOC charges. To establish a prima facie Title VII retaliation claim, the plaintiff must show that:

> 1) she engaged in activity protected by Title VII; 2) the employer knew of her exercise of protected rights; 3) the employer took a materially adverse action against the plaintiff or subjected her to severe and pervasive retaliatory harassment; and 4) there was a causal connection between the protected activity and the adverse action.

*Cecil*, 301 Fed. Appx. at 501 (citing *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003)).

The plaintiff concedes that she was never subjected to an adverse employment action. (Docket No. 58 at 3; Docket No. 59 ¶ 17.) This means that she must show that the defendant subjected her to "severe and pervasive retaliatory harassment." The plaintiff argues that she

---

[5] These cases include *Boutros v. Canton Regional Transit Authority*, 997 F.2d 198 (6th Cir. 1993), which involved claims regarding national origin harassment; *Meijer v. National Labor Relations Board*, 463 F.3d 534 (6th Cir. 2006), which involved an unfair labor practices claim regarding distribution of union literature; *Baskin v. Smith*, 50 Fed. Appx. 731 (6th Cir. 2002), which involved a 42 U.S.C. § 1983 claim regarding an arrest that allegedly violated the First and Fourth Amendments; and *Smith v. Pyro Mining Co.*, 827 F.2d 1081 (6th Cir. 1987), which involved religious discrimination claims.

10

"testified that the workplace environment worsened after her EEOC complaints were filed." (Docket No. 58 at 8.) In support, she attaches a single page of deposition testimony, in which she testified that some unidentified person "was fine . . . with [her] until the EEOC complaint come in [sic]. [They] had disputes, but he was fine with [her]." (Docket No. 58, Ex. 1 at 201.) This isolated page of testimony offers no context for the plaintiff's comment, and it is unclear whom or what she is talking about. This testimony cannot support a retaliation claim. In any event, as described above, the plaintiff has failed to show that she was subjected to severe and pervasive sexual harassment at any point during her employment.[6] The court will dismiss the plaintiff's retaliation claim.

## CONCLUSION

For all of the above reasons, the court will grant the defendant's Motion for Summary Judgment and will dismiss the case as to plaintiff Bobbie McDonald.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

[6] The plaintiff alleged in her May 2008 EEOC charge that the City retaliated after her initial EEOC charge by forcing her to return to the job site where a contractor had attacked her. The plaintiff's response brief does not mention this allegation. In any event, the plaintiff has offered no evidence showing a causal connection between this work assignment and the filing of her initial EEOC charge.