

2 of 100 DOCUMENTS

**BARBARA LAYNE, Plaintiff-Appellee, v. HUISH DETERGENTS, INC., Defendant-Appellant.**

No. 00-6082

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

40 Fed. Appx. 200; 2002 U.S. App. LEXIS 14015

July 10, 2002, Filed

**NOTICE:** [**1] NOT RECOMMENDED FOR FULL-TEXT PUBLICATION. SIXTH CIRCUIT RULE 28(g) LIMITS CITATION TO SPECIFIC SITUATIONS. PLEASE SEE RULE 28(g) BEFORE CITING IN A PROCEEDING IN A COURT IN THE SIXTH CIRCUIT. IF CITED, A COPY MUST BE SERVED ON OTHER PARTIES AND THE COURT. THIS NOTICE IS TO BE PROMINENTLY DISPLAYED IF THIS DECISION IS REPRODUCED.

**PRIOR HISTORY:** ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY. 97-00229. McKinley, Jr. 07-17-00.

**DISPOSITION:** Judgment of the district court affirmed.

**COUNSEL:** For BARBARA LAYNE, Plaintiff - Appellee: Nancy O. Roberts, Bowling Green, KY.

For HUISH DETERGENTS INC, Defendant - Appellant: Edwin S. Hopson, Denise L. St. Clair, Gordon A. Rowe, Jr., Wyatt, Tarrant & Combs, Louisville, KY.

**JUDGES:** Before: MOORE and COLE, Circuit Judges and TARNOW, * District Judge.

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

**OPINION BY:** ARTHUR J. TARNOW

**OPINION**

[*201] **ARTHUR J. TARNOW, District Judge.** Defendant Huish Detergents, Inc. ("Huish") appeals the district court's judgment for Plaintiff Barbara Layne. Layne, a former Huish employee, sued Huish in state court for sexual harassment and for firing her in retaliation [**2] for filing a sexual harassment complaint under Kentucky law. Huish removed the case to federal court upon the addition of a claim under [*202] Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. *After the district court dismissed Layne's sexual harassment claim, a jury returned a verdict for Layne on her state-law retaliation claim. The jury awarded her $ 15,000 in compensatory damages and $ 100,000 in punitive damages. Huish appeals four issues: (1) whether the district court erred in admitting Layne's testimony regarding various incidents of sexual harassment; (2) whether the evidence was sufficient to support the jury's verdict; (3) whether the district court erred in instructing the jury with respect to punitive damages; and (4) whether the district court's retaliation instruction was erroneous. We **AFFIRM** the judgment of the district court.*

### I. Background

Barbara Layne worked at Huish's Bowling Green, Kentucky, detergent plant from February 1996 until November 4, 1996, when she was fired. In her lawsuit, she claimed that she was subjected to pervasive, degrading and humiliating sexual comments while employed at Huish. Layne [**3] claims that she brought many of the incidents to the attention of her immediate supervisor, Norris Ray, and that Ray spoke to the employees making the remarks in some cases. Ray, however, never followed Huish's formal policy with respect to Layne's complaints. Until November 1, 1996, Layne never attempted to take the matter to Huish's human resources manager, Pam Pendleton.

On Friday, November 1, 1996, Layne was told by another Huish employee that there was a rumor circulating that Layne had engaged in sexual intercourse with two male Huish employees at a Halloween party. Upset by the comment, Layne was unable to perform her job responsibilities. When Ray tried to reassure Layne that he would discuss the matter with the employee spreading this rumor, Layne requested to speak to Pendleton. Ray arranged a meeting, which took place thirty minutes later. Layne told Pendleton that she wished to file a formal complaint. Layne then clocked out for the day and went home.

Layne worked Saturday but arrived late for work on Sunday, November 3, 1996. She claims that her alarm clock failed due to a power outage. When Layne arrived, Ray told her that she had an appointment with Pendleton at 8: [**4] 00 a.m. the next morning (Monday) and that she should go home. At the meeting, on Monday, November 4, 1996, Pendleton informed Layne that she was being terminated for poor attendance. The attendance policy did not state explicitly how many absences or tardies were required before an employee would be terminated. The parties do not dispute that Layne had a poor attendance record. Layne admits to having missed or been tardy several days during her employment.

Pendleton testified that she was somewhat concerned about terminating Layne so soon after the filing of Layne's complaint. But "the decision was finally made that regardless of that, we would take action with her as we would with any other employee with attendance problems of this nature." Pendleton testified that in making this decision she reviewed Layne's file and consulted with her supervisor, Dick Amos. Amos was also aware of the sexual harassment complaint.

Layne filed suit in Kentucky state court on October 31, 1997, alleging, inter alia, sexual harassment and retaliatory discharge under the Kentucky civil rights statute, Ky. Rev. Stat. § 344.010 *et seq*. Layne subsequently amended her complaint to add a federal [**5] Title VII claim, at which point Huish removed the case to federal court. Huish moved for summary judgment on all Layne's claims. The district [*203] court granted Huish's motion with respect to the sexual harassment claim, holding that "the conduct at issue, while offensive, [did] not rise to the level of defining an objectively hostile work environment." That court also held, however, that Layne had "estab-

lished a prima facie case of retaliatory discharge." The district court further concluded that Huish advanced a legitimate reason for firing Layne -- chronic absenteeism. Layne had "presented evidence which raises a question of fact as to whether Huish's proffered reason *actually* motivated the discharge." (Emphasis in the original). Specifically, the district court noted "the temporal proximity between the date of filing of the internal sexual harassment complaint and the date of termination make Layne's discharge highly suspect." Thus, the district court denied Huish summary judgment on Layne's retaliatory discharge claim.

Prior to trial on this claim, Huish moved the court to exclude evidence relating to the details of the alleged sexual harassment. Huish argued that details [**6] of such alleged incidents were not relevant to Layne's retaliatory firing claim. Further, Huish objected because there was a substantial risk of unfair prejudice from such evidence. Denying this motion, the Court limited Layne's testimony to what she told Ray regarding the various incidents of alleged sexual harassment, because whether the incidents actually occurred was irrelevant to the underlying retaliation claim. During the trial, Huish's counsel objected to Layne's testimony with respect to questions aimed at the details of incidents underlying Layne's complaints to Ray. In response, the district judge instructed Layne to testify to the substance of her complaints to Ray. The district court also admonished the jury:

> Ladies and gentlemen, let me tell you what's going on. We're having some difficulty keeping things to the point. We want to make things as relevant for you as we can, but it's difficult for the witness to testify about these events without giving some background to it.
>
> So I want you to understand that when she makes statements about someone doing something to her or saying something to her ... this trial is not about whether those things actually happened []. [**7] That's not what this trial is about.
>
> The trial is about whether she complained to Norris Ray about those things that she says happened. Because I'm not going to let the defendant come in here and try to deny all the allegations that were made []. I am going to let them bring in Norris Ray, and he'll testify to you about whether or not she complained or not.
>
> So I just need you to understand that we're not really concerned about the truth of the allegations that she made. We're only concerned about the truth of whether she complained to her supervisor about things, and it's those things that she's going to testify to you about. But you don't need to be too concerned about whether those things really happened.
>
> She's going to say they did. They would love to say they didn't. But I don't want this trial to last ten weeks, okay? So that's what we're doing, and I hope you understand that.

The jury rendered a verdict for Layne.

Huish moved the court for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, or, alternatively, for a new trial, pursuant to Fed. R. Civ. P. 59. In this motion, Huish argued that Layne had not presented evidence sufficient to support the jury's [**8] finding of retaliation, that the jury had been misled by the district court's admission of irrelevant and prejudicial testimony, [*204] that the jury instruc-

Case 3:08-cv-00728   Document 105-4   Filed 12/23/09   Page 3 of 10 PageID #: 725

tions were confusing and incomplete, and that punitive damages were not warranted on the facts of the case. The district court denied this motion. Huish filed this timely appeal.

## II. Analysis

### A) Evidentiary Rulings

We review all evidentiary rulings for abuse of discretion. *See Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 716 (6th Cir. 1999).

First, Huish argues that the district court abused its discretion by allowing witnesses to testify as to the facts of various incidents of alleged sexual harassment. Huish had been granted summary judgment on Layne's sexual harassment claim before trial. Thus, Huish reasoned that testimony as to the alleged sexual harassment was irrelevant pursuant to Fed. R. Evid. 402.

Huish's relevance argument regarding the details of the alleged incidents of sexual harassment is without merit. The Federal Rules of Evidence define relevance as: "[] evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action [**9] more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Layne theorizes that her poor attendance record only became a problem when she filed a formal complaint of sexual harassment. According to her theory, if she informally complained to Ray, he was willing to overlook her poor attendance. Layne reasons that her past complaints to Ray regarding inappropriate incidents of harassment were relevant because they supported this version of her retaliation claim. Layne had to show that Ray tolerated her poor attendance record until she filed a formal sexual harassment complaint. At that point, he took her attendance issue to Pendleton.

Layne's past sexual harassment complaints were relevant under this theory. Her complaints were evidence central to the determination of the ultimate issue in the case -- whether Layne was fired in retaliation for filing the formal complaint. Layne's past complaints to Ray were relevant because they support the conclusion that Layne was fired for making the formal complaint rather than for her chronic absenteeism. Although Ray was arguably not a decision maker, the unofficial complaints to Ray constitute the first prong of [**10] Layne's theory. These complaints and the associated tolerance of poor attendance bear on Huish's reaction to the official complaint and intolerance.

Huish next argues that even if evidence of Layne's complaints were relevant, the evidence should have been excluded as prejudicial under Fed. R. Evid. 403. Appellate review of the district court's balancing under Fed. R. Evid. 403 is limited. This court "must look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Zipkin,* 729 F.2d 384, 389 (6th Cir. 1984)(citations omitted). The *Zipkin* Court elaborated on this principle stating:

> the draftsmen intended that the trial judge be given a very substantial discretion in 'balancing' probative value on the one hand and 'unfair prejudice' on the other, and that [the trial judge] should not be reversed simply because an appellate court believes it would have decided the matter otherwise."

729 F.2d at 390 (quoting *United States v. Long,* 574 F.2d 761, 767 (3d Cir.), *cert. denied,* 439 U.S. 985, 58 L. Ed. 2d 657, 99 S. Ct. 577 (1978)). [**11]

Viewing the proffered evidence in the light most favorable to Layne, the testimony regarding her past complaints was [*205] highly relevant to the ultimate determination in the case.

Even though the testimony did involve some danger of jury confusion or unfair prejudice, the district court did not err in concluding that this danger did not substantially outweigh the probative value. Moreover, the district court admonished the jury that the testimony at issue was not offered to prove that the underlying events that Layne complained of actually took place. This limiting instruction minimized any potential confusion or unfair prejudicial effect.

Huish also argues that the district court abused its discretion by excluding evidence of Layne's own sexually charged conduct at work. According to Huish, this evidence would have challenged the good faith of Layne's harassment complaint. The district court excluded this evidence, because it determined that such evidence was not relevant to whether Huish retaliated against Layne for making sexual harassment complaints.² The district court was also concerned that evidence of Layne's character would distract the jury from the retaliation issue. The [**12] district court did not abuse its discretion in determining that evidence of Layne's own conduct was not relevant. The issue before the trier of fact was whether Layne was retaliated against for making a sexual harassment complaint. Given the discretion in favor of a district court's Rule 402 determinations, Huish's argument does not have merit.

> 2   Layne argues on appeal that evidence of her past conduct was excluded properly because Huish failed to comply with Fed. R. Evid. 412, which governs the admissibility of a victim's past sexual behavior or alleged sexual predisposition. We do not address this issue because the district judge did not exclude this evidence based on Huish's failure to comply with the procedural requirements of Fed. R. Evid. 412(c). The district court made a relevance determination.

B) *Sufficiency of the Evidence*

Huish next argues that the district court erred in denying its motion for judgment as a matter of law, pursuant to Fed. R. Civ. P. 50, or, in the alternative, for a new [**13] trial. Huish argues that the evidence produced by Layne was insufficient to support the jury's verdict. While this case was removed under the federal court's federal-question jurisdiction, it is appropriate to analyze it under the standard for a diversity case.³ In this case the district court applied only Kentucky state law. Further, the remaining parties were diverse, as Layne was a citizen of Kentucky and Huish was a Utah corporation with its principal place of business in Utah.

> 3   In federal question cases, this court generally reviews *de novo* a Rule 50 motion based on insufficient evidence. *See Gray v. Toshiba America Consumer Prods., Inc.*, 263 F.3d 595, 598 (6th Cir. 2001). Under this standard of review, the evidence should be viewed in the light most favorable to the non-moving party and all reasonable inferences are to be drawn in the non-moving party's favor.

This Court has held that the standard of review in diversity cases for a Rule 50 motion challenging the sufficiency of the [**14] evidence is the "standard [] applicable under the law of the forum state." *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996). Kentucky reviews such motions under a standard similar to that applied in federal-question cases. In *Morales v. American Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998), the court stated:

> Under Kentcuky law, a motion for [] judgment as a matter of law [] should be granted only if 'there is a complete absence of proof on a material issue in the action, or if no disputed issue of fact exists upon which reasonable minds could differ.'

[*206] *Id.* (quoting *Washington v. Goodman*, 830 S.W.2d 398, 400, 39:5 Ky. L. Summary 23 (Ky. Ct. App. 1992)).

The claim submitted to the jury was brought under the Kentucky Civil Rights Act, rather than Title VII. Kentucky courts, however, generally employ Title VII when interpreting the Kentucky Act. In *Ammerman v. Bd. of Educ. of Nicholas County.*, 30 S.W.3d 793, 797-98 (Ky. 2000), the Court held: "The Kentucky Act is similar to Title VII of the 1964 federal Civil Rights Act and should be interpreted consistently with federal law." (footnote omitted). [**15] In analyzing this case, the Court applies principles of Title VII.

Layne produced sufficient evidence to establish a *prima facie* case of retaliation. She made a sexual harassment complaint which is a protected activity, of which Huish was aware, she was terminated and offered circumstantial evidence of causation. *See Morris v. Oldham Co. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Similarly, Huish satisfied its burden by producing a legitimate non-retaliatory explanation, poor attendance, for Layne's discharge. Thus, Layne was required under the *McDonnell Douglas* burden-shifting rules to prove that Huish's proffered non-retaliatory explanation for her termination was pretextual. The district court determined, in denying Huish's motion for summary judgment, that Layne had produced sufficient evidence to create a dispute of material fact on this issue. Denying Huish's Rule 50 motion, the court held that Layne produced sufficient evidence at trial to support the jury's finding that Huish's explanation for her determination was pretextual.

Huish argues, however, that Layne did not offer sufficient evidence at trial to support a finding of retaliation. Layne's [**16] case was faulty, according to Huish, because Layne relied predominately on the timing of her discharge. Further, Huish contends that the fact that Layne showed up late for work after making the complaint negates any inference that could be drawn from the timing of Layne's discharge. *See id.* at 35.

To rebut Huish's purported basis for termination, Layne relied on temporal proximity, the company's inconsistent attendance records, and the credibility of Huish's witnesses. The decision to terminate Layne was made within three days of the filing of the complaint. Layne had a poor attendance record prior to filing the official complaint, but was not sanctioned. Almost as soon as she filed the official complaint, she was fired. That she was late for work the day before her termination does not alter the fact that she had filed a formal sexual harassment claim only three days before.

Further, Layne's counsel attempted to undermine the credibility of Ray with respect to his reason for recommending that Layne be terminated. Layne pointed to various inconsistencies in Ray's testimony. She also questioned Ray as to his conduct on Sunday, November 3, 1996, the day before Layne was fired. [**17] That day when Layne did not show to work timely, Ray called Pendleton at home in the early morning (on a Sunday) to inform Pendleton. This fact is consistent with Layne's theory that Ray had determined that her sexual harassment complaint was potentially threatening to his position, thus motivating his adverse recommendation.

The jury could have reasonably concluded that Huish retaliated against Layne for filing the formal sexual harassment complaint based on the facts established in her *prima facie* case and a disbelief of Ray's and Pendleton's explanations for her termination. Layne was not required to submit additional evidence to reach a threshold of sufficiency to support this conclusion. Although the exact nature [*207] of plaintiff's evidentiary burden is not clear in a case such as this, the Supreme Court has provided the following guidance in a recent age-discrimination case:

Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the palintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's [**18] case and that properly may be considered on a motion for judgment as a matter of law. For purposes of this case, we need not -- and could not -- resolve all of the circumstances in which such factors would entitle an employer to judgment as a matter of law. It suffices to say that, because a *prima facie* case and sufficient evidence to reject the employer's explanation may permit a finding of liability, the Court of Appeals erred in proceeding from the premise that a plaintiff must always introduce additional, independent evidence of discrimination.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148-49, 147 L. Ed. 2d 105, 120 S. Ct. 2097. Considering these factors in the present case, Huish was not entitled to judgment as a matter of law. Layne presented an especially strong *prima facie* case and attacked the credibility of Ray, her immediate supervisor. There was evidence in the record from which the jury could have concluded that Layne's filing of the formal complaint was the motivating factor for her discharge. Given the jury's verdict, it apparently accepted that version of events over that presented by the Huish employees, Ray and Pendleton.

[**19] Next, Huish argues that the jury wrongly concluded that Ray terminated Layne. Ray did not have the authority to terminate Huish employees. Thus, Huish concludes that it is entitled to judgment as a matter of law because there was no evidence that the Huish employees with authority to terminate Layne retaliated against her for filing the formal complaint.

This argument fails. Huish concedes that Ray recommended that Layne be terminated. Pendleton admitted that such a recommendation coming from Ray would carry some weight. In addition, Pendleton knew about Layne's formal sexual harassment complaint, as she discussed this matter with Ray before terminating Layne. Pendleton testified that, under the terms of her at-will employment, Layne could have been terminated at any point in her employment. But Pendleton, like Ray, apparently did not determine that Layne's attendance problems warranted her termination until after the filing of the formal complaint. Indeed, the record indicates that Pendleton approved a four-percent pay raise for Layne in September 1996, despite her poor attendance record. Further, the other individual with authority, Amos, knew of the complaint before approving [**20] the adverse employment action. Thus, there is evidence in the record to support the jury's verdict against Huish on that basis.

*C) Punitive Damages*

Huish next argues that the district court erred by instructing the jury on the issue of punitive damages. There is no binding Sixth Circuit or Kentucky Supreme Court precedent on-point as to punitive damages under the Kentucky Act. Thus, this Court must first determine whether punitive damages are available. A number of courts have determined that the available remedies under the act are limited to those specifically enumerated. This line of cases has restricted plaintiffs from seeking punitive damages because such damages are not included in the plain language of the Act. *See Lewis v. Quaker Chem. Corp.*, 2000 U.S. App. LEXIS 22321, [*208] 2000 WL 1234356, at

*11 (6th Cir. 2000); *Boone v. Kent Feeds, Inc.,* 2001 U.S. Dist. LEXIS 9616, 2001 WL 1775375 (Ky. 2001); and *Messick v. Toyota Motor Mfg. Kentucky Inc.,* 45 F. Supp. 2d 578, 581-82 (E.D. Ky. 1999).

However, the better understanding of available remedies under the Kentucky Act is found in cases holding that punitive damages are available. In *Timmons v. Wal-Mart,* 33 F. Supp. 2d 577, 578 (W.D. Ky. 1999), [**21] the court held that punitive damages are available under the Kentucky Act because it emulates the Federal Civil Rights Act which was amended to allow punitive damages. The court made the same conclusion that punitive damages were available, although based on different reasoning, in *Barton v. United Parcel Service, Inc.,* 175 F. Supp. 2d 904 (W.D. Ky. 2001). In *Barton,* the court recognized that the Kentucky general punitive damages statute, Ky. Rev. Stat. ß 411.184, authorized punitive damages in all actions except breach of contract. *Id.* at 910. Ky. Rev. Stat. ß 411.184(5) states: "This statute is applicable to all cases in which punitive damages are sought and supercedes any and all existing statutory or judicial law insofar as such law is inconsistent with the provisions of this statute." Moreover, Kentucky state courts have generally held that punitive damages are available in wrongful termination cases. *See Simpson Cty. Steeplechase Ass'n, Inc. v. Roberts,* 898 S.W.2d 523, 526, 42:4 Ky. L. Summary 24 (Ky. Ct. App. 1995). This Court concludes that punitive damages are available under the Kentucky Act.

Huish argues that a reasonable juror could not [**22] have found that Huish had the required state of mind to support an award of punitive damages. Huish's argument relies on federal case law as opposed to Kentucky case law. Under Kentucky law, "[a] plaintiff shall recover punitive damages only upon proving, by clear and convincing evidence, that the defendant from whom such damages are sought acted toward plaintiff with oppression, fraud or malice." Ky. Rev. Stat. ß 411.184(2). In wrongful discharge cases, Kentucky courts have held that the required state of mind may be inferred. *See Northeast Health Mgt., Inc. v. Cotton,* 56 S.W.3d 440, 448-49 (Ky. Ct. App. 2001).

In the present case, the district court instructed the jury in terms of Ky. Rev. Stat. ß 411.184. There was sufficient evidence from which the jury could have concluded that Huish intentionally retaliated against Layne for filing a formal sexual harassment complaint. After determining that Layne was intentionally retaliated against for filing a formal complaint, the jury inferred, as is permitted under Kentucky law, that Huish officials had the requisite mental state for the imposition of punitive damages. Thus, the district court did not err when it instructed [**23] the jury on punitive damages.

Second, Huish argues that the jury was not presented with any evidence from which it could reasonably conclude that the decisionmakers, Pendleton and Amos, were influenced by an improper motive. Huish contends that Layne's entire case rested on the misdeeds of Ray, who did not have authority to terminate the employment relationship. Further, Huish contends that the evidence does not support a finding that Ray acted with the requisite state of mind. Huish's argument does not withstand scrutiny. There was evidence that Layne complained repeatedly about alleged sexual harassment to Ray, her immediate supervisor. Ray did not report this activity to Pendleton. However, when Pendleton was made aware of the harassment, Ray acted quickly to inform Pendleton of Layne's attendance problems, calling her on a Sunday. This evidence [*209] does support an underlying finding of malice, oppression or fraud.

Huish's argument that there was not evidence to support a finding against the company because the decision makers were unaware of the harassment fails as well. Pendleton clearly knew of Layne's protected activity. Pendleton took Layne's formal complaint of harassment,

[\*\*24] then terminated her days after. Pendleton testified that she informed Amos of the pending harassment complaint before the decision to terminate was made. Thus, the individual employees with authority were aware of Layne's protected activity.

Third, Huish argues that punitive damages cannot be assessed in this case pursuant to Ky. Rev. Stat. ß 411.184(3). This provision states: "In no case shall punitive damages be assessed against a principal or employer for the act of an agent or employee unless the principal or employer authorized or ratified or should have anticipated the conduct in question." The Kentucky Court applied this provision broadly in *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 43:4 Ky. L. Summary 26 (Ky. 1996). In *Kroger*, the Kentucky Supreme Court held that punitive damages were available against the employer based, in part, on the personnel manager's orders to the employee's disability insurer to conduct surveillance of the employee to ensure that he was disabled.

In another case applying this provision, the Kentucky Supreme Court held that punitive damages could not be assessed against an employer. *See Berrier v. Bizer*, 57 S.W.3d 271, 284 (Ky. 2001). [\*\*25] In *Berrier*, the only remaining defendant in the case was the employer. The court held that punitive damages could not be awarded pursuant to Ky. Rev. Stat. ß 411.184(3), because the employer lacked any knowledge or input as to the employment decision. Unlike the employer in *Berrier*, the employer in the present case did have knowledge of the protected activity. As discussed above, both managers with authority as to personnel decisions knew of Layne's protected activity. Despite this knowledge, and with the recommendation of Layne's immediate supervisor, Layne was fired days after exercising her right. These facts provide sufficient support for an award of punitive damages under Kentucky law.

D) *Challenged Jury Instruction on Retaliation Claim*

This court "reviews a jury instruction to determine whether it was a correct interpretation of the relevant law." *Rogers v. T.J. Samson Community Hosp.*, 276 F.3d 228, 232 (6th Cir. 2002). In doing so, the court looks to the instructions as a whole "[]to determine whether they adequately inform the jury of the relevant considerations." *Kitchen v. Chippewa Valley Schs.*, 825 F.2d 1004, 1010 (6th Cir. 1987). [\*\*26] "A judgment may be reversed if the instructions, viewed as a whole, were confusing, misleading and prejudicial." *Id.* at 1011.

The Kentucky Supreme Court has held that the proper instruction on causation in an unlawful termination case "should be framed in terms of whether the lawfully impermissible reason for discharge 'was a substantial and motivating factor but for which the employee would not have been discharged.'" *First Property Mgt. Corp. v. Zarebidaki*, 867 S.W.2d 185, 186 (Ky. 1993). In the present case, the district court instructed the jury:

> To prevail on this claim, the plaintiff must prove to you by a preponderance of the evidence that her making of complaints of sexual harassment to the Defendant was a substantial and motivating factor in its decision to discharge her, but for which she would not have been discharged.

[\*210] This instruction, then, adequately informed the jury of the relevant law.

Huish objects, however, to the following sentence, found in the next paragraph of the court's instructions: "If you believe by a preponderance of the evidence that the making of sexual harassment complaints did in fact contribute to [\*\*27] the discharge as one of the substantial and motivating factors, then you

may find for the Plaintiff." Huish argues that this instruction confused the jury, as evidenced by the jury's question to the judge during deliberations. The jurors asked whether there could be liability if Huish fired Layne for her absences and her complaint. Huish argues that this instruction was confusing because the court's directions were inconsistent. The instructions indicated that the complaints had to be "one of" the substantial and motivating factors, instead of the "but-for" cause. This error, according to Huish, is grounds for reversal.

Taken as a whole, the challenged instructions were not confusing or prejudicial to Huish. The district court instructed the jury that, in order to render a verdict for Layne, it had to find that her sexual harassment complaints were the but-for reason for her termination. The sentence that Huish claims was confusing did not contradict that earlier instruction. In context, the sentence at issue was intended to clarify the standard found in the previous paragraph of the instructions. The sentence at issue followed two sentences cautioning the jury that discharge alone [**28] does not establish retaliation and that Huish provided a legitimate basis for termination does not necessarily relieve liability. Although Huish would have preferred an explicit restatement of the "but-for" language found in the preceding paragraph, on the whole, the challenged instruction was not confusing or prejudicial.

Huish also argues that the district court erred in failing to instruct the jury on *McDonnell Douglas* burden shifting. Specifically, Huish contends that the court should have instructed the jury on the issue of pretext. This court has held, however, that district courts need not instruct juries on the burden shifting scheme so long as the "ultimate question of retaliation" is put before the jury. *See Kitchen*, 825 F.2d at 1012. Moreover, "in Kentucky jury instructions do not include evidentiary presumptions." *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 824 (Ky. 1992). The ultimate question of retaliation was put before the jury in [**29] this case. Thus, there was no error.

### III. Conclusion

For the reasons stated above, we AFFIRM the district court's judgment.