IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KATHRYN REITZ and<br>BOBBIE MCDONALD,<br><br>    Plaintiffs,<br><br>v.<br><br>CITY OF MT. JULIET,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)   Case No. 3:08-cv-0728<br>)   Judge Trauger<br>)<br>)<br>)<br>) |

## MEMORANDUM

Pending before the Court is plaintiff Kathryn Reitz's Motion to Compel (Docket No. 104) and defendant City of Mt. Juliet's response (Docket No. 109).[1] For the reasons discussed below, the plaintiff's motion will be granted.

## BACKGROUND

Reitz is suing her previous employer, the City of Mt. Juliet (the "City"), for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[2] Reitz worked as a clerk in the City's storm water division. In April 2007, she filed an internal sexual harassment complaint, alleging that she faced a hostile work environment and had been discriminated against because of her gender. In response, the City retained Kristin Berexa, a

---

[1] Plaintiff Bobbie McDonald's claims were previously dismissed (Docket No. 79), so the term "plaintiff" will refer solely to Reitz.

[2] Unless otherwise noted, the facts are drawn from the parties' submissions and the court's own review of the docket.

1

lawyer from the Nashville law firm Farrar & Bates, LLP, to conduct an internal investigation regarding Reitz's allegations.  Berexa and an associate interviewed dozens of employees and produced a 17-page report detailing their findings.  The City released this report to the public.  Berexa ultimately concluded that no hostile environment existed and that Reitz had not been discriminated against.

Reitz was fired approximately one year later, and she subsequently filed this lawsuit, alleging Title VII hostile environment and retaliation claims.  (*See* Docket No. 1.)  The City moved for summary judgment, attaching a portion of Berexa's memorandum.  (*See* Docket No. 69, Ex. 1 at 40-44.)  In addressing Reitz's hostile environment claim, the City argued that it responded reasonably to the internal complaint by hiring Berexa to conduct an investigation.  (Docket No. 68 at 14-15.)  Reitz's response brief abandoned her hostile environment claim.  (Docket No. 93 at 5.)  The court dismissed that claim but determined that Reitz's retaliation claim should remain for trial.  (Docket No. 102.)

Reitz now seeks discovery of memoranda written by Berexa and her associate regarding interviews of City employees that were conducted in the course of the investigation.[3]  The City has withheld these documents on claims of attorney-client privilege and work-product protection.  The privilege log entry for nearly every document sought by the instant motion reads: "Memo to file from [lawyer] regarding interview with [witness.]"  (*See* Docket No. 105,

---

[3] The somewhat unusual timing of this Motion to Compel is explained by the fact that Reitz's previous lawyer was allowed to withdraw in July 2009, and new counsel was appointed in October 2009 – after the defendant had already filed its summary judgment motion.  Additional counsel for the plaintiff filed a notice of appearance on December 1, 2009.

2

Ex. 2.)

## ANALYSIS

The plaintiff has filed a Motion to Compel pursuant to Federal Rule of Civil Procedure 37. Rule 37(a) allows a party to file a motion to compel if the opposing party fails to produce relevant, non-privileged documents. Fed. R. Civ. P. 37(a)(3)(B)(iv).

### I. Relevance of the Documents

As a threshold matter, the court must address whether the documents at issue are relevant to Reitz's case. The plaintiff's hostile environment claim has been dismissed, and only her retaliation claim remains for trial. The City correctly points out that Berexa's investigation dealt solely with allegations of a hostile environment and gender discrimination, not with allegations of retaliation. Thus, the City argues, none of the requested documents are relevant to the plaintiff's surviving claim, and the court should deny discovery. (Docket No. 109 at 3-7.)

The City's brief focuses on whether the documents would be admissible at trial. For example, it argues that the interview memoranda would be "highly prejudicial to the Defendant" under Federal Rule of Evidence 403, and it cites cases in which courts applied Rule 403 to exclude evidence at trial. (Docket No. 109 at 4-6.) But the pertinent question is whether the documents are discoverable, not whether they are admissible. *See* Federal Rule of Civil Procedure 26(b)(1) (setting out scope of discovery and stating that documents need only be "reasonably calculated to lead to the discovery of admissible evidence"). "[T]he scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad," and Rule 26 must be "construed broadly to encompass any matter that bears on, or that reasonably could lead

3

to other matters that could bear on, any issue that is or may be in the case." *Conti v. Am. Axle & Mfg.*, 326 Fed. Appx. 900, 904 (6th Cir. 2009) (citations omitted).

The interview memoranda fall within this broad scope. Two central issues in this case are (1) Reitz's job performance (specifically, whether she was frequently tardy and disorganized) and (2) whether Reitz faced increased disciplinary scrutiny after filing her harassment complaint. As to the first issue, it is likely that the interviews with Reitz's co-workers and supervisors covered Reitz's work habits. For example, Berexa's final report states that Gary Gaskin, Reitz's supervisor, said that Reitz "had difficulty complying with her regular work hours." (Docket No. 96, Ex. 8 at 16.) As to the second issue, the interviews undoubtedly covered the discipline that Reitz faced before she filed the internal complaint. Berexa investigated Reitz's claim that she was unfairly disciplined for time clock infractions; Reitz had said that she was "verbally counseled regarding her time clock usage[,] more so than a male employee in her department." (*Id.*) Furthermore, the witnesses interviewed by Berexa will probably testify at trial, and the interview memoranda contain information that will be valuable for impeachment purposes. Because notes from Berexa's interviews are relevant to Reitz's retaliation claim, the court will not allow the City to withhold the documents on relevance grounds.[4]

## II. Implied Waiver of Attorney-Client Privilege and Work-Product Doctrine

The City further argues that the interview memoranda are protected from discovery by the attorney-client privilege and the work-product doctrine. The plaintiff does not contest that

---

[4] As explained below, however, the court will allow the defendant to redact the lawyers' "opinion" work product as irrelevant.

4

these protections apply; instead, she argues that the defendant has waived them.

The attorney-client privilege protects confidential communications between a lawyer and a client on matters relating to legal representation. *Ross v. City of Memphis*, 423 F.3d 596, 600 (6th Cir. 2005). The work-product doctrine, which is distinct from and broader than the attorney-client privilege, protects documents prepared by a lawyer in anticipation of litigation. *Tenn. Laborers Heath & Welfare Fund v. Columbia/HCA Healthcare Corp. (In re Columbia/HCA Healthcare Corp. Billing Practices Litig.)*, 293 F.3d 289, 304 (6th Cir. 2002). "Fact" work product, which reflects information received by the lawyer, receives less protection than "opinion" work product, which reflects the lawyer's "mental impressions, opinions, conclusions, judgments, or legal theories." *Id.* at 294 (citation omitted). The client may waive either the attorney-client privilege or work-product protection "by conduct which implies a waiver of the privilege or a consent to disclosure." *Id.* at 294, 305 n.24 (citation omitted).

Here, the issue is whether the defendant waived privilege and work-product protection by relying on Berexa's report in its summary judgment filings. In cases of co-worker harassment, an employer can raise the *Faragher-Ellerth* affirmative defense, which requires the employer to show that it "exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Gallagher v. C.H. Robinson Worldwide, Inc.*, 567 F.3d 263, 275 (6th Cir. 2009) (citation omitted). Often, an employer that receives an internal sexual harassment complaint retains outside counsel to investigate the allegations. If the employer is sued, it argues that the internal investigation shows the employer's reasonable efforts to detect and prevent harassment. This is exactly what the City did in its summary judgment brief:

5

> [T]he City has presented evidence that entitles it to summary
> judgment, based on the *Faragher-Ellerth* affirmative defense to a
> sexually hostile work environment.  The City has in place a sexual
> harassment policy, requiring an aggrieved party to report sexual
> harassment.  Reitz submitted a complaint on April 5, 2007, which
> was fully, completely, and exhaustively investigated by an outside
> investigator retained by the City.  Over 25 witness interviews were
> conducted. . . .
>
> The City exercised reasonable care.  Reitz's complaint under the
> sexual harassment policy resulted in an exhaustive outside
> investigation.  The investigator found Reitz's complaint to be
> without merit.  Reitz made no further written complaint under that
> policy.  Thus, the City acted swiftly and responsibly when Reitz
> made her initial complaint on April 5, 2007, and the City has
> conclusively established this defense.

(Docket No. 68 at 14-15.)  The City also attached several pages of Berexa's report to its filing. Docket No. 69, Ex. 1 at 40-44.)

Now, the City seeks to block discovery of the interview memoranda that document Berexa's investigative efforts.  But the defendant cannot use the Berexa report as a sword by premising its *Faragher-Ellerth* defense on the report, then later shield discovery of documents underlying the report by asserting privilege or work-product protection.  *Walker v. County of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005); *McGrath v. Nassau County Health Care Corp.*, 204 F.R.D. 240, 246 (E.D.N.Y. 2001).  The Sixth Circuit has recognized that, when a party uses "the content of privileged communications" offensively, it is troublesome for the party to subsequently claim privilege "as a shield to prevent either testing of the claim or, if some privileged communications have been revealed, amplification or impeachment of the material." *Ross*, 423 F.3d at 605 n.5.  Accordingly, "the privilege may be implicitly waived when the defendant asserts a claim that in fairness requires examination of protected communications."

6

*Id.* at 605 (citation omitted); *see also In re Grand Jury Proceedings Oct. 12, 1995*, 78 F.3d 251, 256 (6th Cir. 1996) (directing that the scope of a privilege waiver "must be guided by fairness concerns").

Although neither party cites them, the court's research has revealed numerous cases compelling the conclusion that the City's reliance on the report waived the attorney-client privilege and work-product protection for the interview memoranda. *Jones v. Rabanco, Ltd.*, No. C03-3195P, 2006 U.S. Dist. LEXIS 58178, at *10-11 (W.D. Wash. Aug. 18, 2006) ("This Court has held that the *Faragher-Ellerth* defense raised by Defendants early in this matter will cause any investigation and remedial efforts into the discrimination alleged in this case . . . to become discoverable, despite any attorney-client privilege that may have normally attached to such communications."); *McGrath*, 204 F.R.D. at 246 (granting discovery of lawyer's handwritten investigative notes; "the Court finds that it would be unjust to allow [the defendant] to invoke the *Faragher*-[*Ellerth*] defense under these facts while allowing it to protect the very documents it relies on to assert that defense"); *Brownell v. Roadway Package Sys., Inc.*, 185 F.R.D. 19, 25 (N.D.N.Y 1999) (granting discovery of statements given to outside lawyer because the defendant "waived the attorney-client privilege by asserting the adequacy of its investigation as an affirmative defense"); *Worthington v. Endee*, 177 F.R.D. 113 (N.D.N.Y. 1998) (granting discovery of notes produced during investigation; by placing the report "at issue," the defendants "implicitly waived the protections customarily afforded privileged communications or information"); *Harding v. Dana Transport, Inc.*, 914 F. Supp. 1084, 1096, 1099 (D.N.J. 1996) (granting discovery of all documents underlying an outside lawyer's investigation, including

7

interviews, because it would be "fundamentally unfair" to not find waiver of privilege and work-product protection when the defendant argued that it had conducted an appropriate investigation); *see also Walker*, 227 F.R.D. at 535 ("If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigation into [the plaintiff's] claims of discrimination, then they waive the attorney-client privilege and the work-product doctrine with respect to documents reflecting that investigation."); *McKenna v. Nestle Purina PetCare Co.*, No. 2:05-cv-0976, 2007 U.S. Dist. LEXIS 8876, at *11 (S.D. Ohio Feb. 5, 2007) (noting that waiver extends "to documents which constitute evidence of the investigation of the claim of harassment or discrimination"); *cf. Volpe v. US Airways, Inc.*, 184 F.R.D. 672, 673 (M.D. Fla. 1998) (analyzing a claim of "self-critical analysis privilege" and holding that, "by relying on its internal investigation as an affirmative defense to liability, defendant has waived any privilege to protect the documents which comprise the internal investigation").

These cases hold that, when a Title VII defendant raises a *Faragher-Ellerth* defense premised on an internal investigation, the defendant waives the attorney-client privilege and work-product protection for documents underlying the final investigative report – including interview memoranda authored by the investigator. Fairness dictates that the plaintiff be allowed to "assess the full measure of [the defendant's] response in light of what it learned from its investigation." *McGrath*, 204 F.R.D. at 246. This is because "[t]he only way the Plaintiff, or the finder of fact, can determine the reasonableness of Defendant's investigation is through full disclosure of the contents thereof." *Brownell*, 185 F.R.D. at 25. "Without allowing discovery of . . . the notes from the investigation, the defendant['s] protections under the attorney/client

8

privilege and the work product doctrine are simultaneously used as a shield and a sword. Under such circumstances, [these protections] shall not abide." *Worthington*, 177 F.R.D. at 118.

The City correctly argues that it did not waive its protections simply by publicizing Berexa's final report. (Docket No. 109 at 13-14.) But none of the cases cited by the defendant involve an employer's use of an investigative report in support of a *Faragher-Ellerth* defense.[5] The distinction between merely publicizing a report and relying on it in court filings is recognized by many cases that uphold privilege and work-product protection, in both Title VII and non-Title VII contexts. *E.g.*, *Ziner v. Cedar Crest College,* No. 04-3491, 2006 U.S. Dist. LEXIS 34858, at *11 (E.D. Pa. May 31, 2006) ("Nor has defendant made any offensive or tactical use of the report or investigation with regards to plaintiff's sexual harassment/gender discrimination claims."); *McIntyre v. Main St. & Main Inc.*, No. C-99-5328 MJJ (EDL), 2000 U.S. Dist. LEXIS 19617, at *11 (N.D. Cal. Sept. 29, 2000) ("Based on this representation that defendant will not rely on the investigation by outside counsel . . . defendant has not waived the attorney-client or work product protections"); *see also In re Trasylol Prods. Liability Litig.*, No. 08-1928, 2009 U.S. Dist. LEXIS (S.D. Fla. Aug. 12, 2009) ("Bayer further represents that it does not intend to utilize the Investigative Report in defense of this litigation . . . ."); *In re Vioxx*

---

[5] For example, *Securities and Exchange Commission v. Schroeder*, No. C07-03798 JW (HRL), 2009 U.S. Dist. LEXIS 39378, at *16-24 (N.D. Cal. Apr. 27, 2009), involved a company's disclosure of an internal stock option backdating investigation; *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 81 (D.D.C. 2003), involved a U.S. Department of Agriculture wildfire investigation; *Rockwell International Corp. v. Department of Justice*, 235 F.3d 598, 604 (D.C. Cir. 2001), involved a DOJ report that was submitted to Congress; and *United States v. Richey*, No. CV 08-452-S-EJL, 2009 U.S. Dist. LEXIS 17794, at *9 (D. Idaho 2009 Mar. 6, 2009), involved an appraisal report that a taxpayer filed with his tax return.

9

*Prods. Liability Litig.*, MDL No. 1657, 2007 U.S. Dist. LEXIS 23164 (E.D. La. Mar. 5, 2007) ("[T]he PSC's 'sword and shield' analogy does not appropriately reflect Merck's use of the Martin Report. Indeed, Merck has not cited, relied upon, nor used the Martin Report offensively in this litigation . . . ."); *Hollinger Internat'l Inc. v. Hollinger, Inc.*, 230 F.R.D. 508 (N.D. Ill. 2005) ("Hollinger has not taken affirmative steps to inject the Special Committee Report or the materials used to create it into this litigation. The Report has not been used offensively in this litigation."). Here, the City waived its privilege and work-product protection not by disclosing Berexa's report, but by making tactical use of it in this litigation.

Of course, Reitz's hostile environment claim has already been dismissed. The City no longer needs to press its *Faragher-Ellerth* defense, and the plaintiff no longer needs to examine the depth of the defendant's investigative efforts. But this is irrelevant. "[O]nce the privilege is waived, waiver is complete and final." *In re Columbia/HCA*, 293 F.3d at 307. Having previously decided to rely on the investigation in its summary judgment papers, the defendant cannot now "unwaive" privilege and work-product protection. The defendant achieved exactly the result it wanted by raising the defense – the hostile environment claim was dismissed. The City cannot argue that its ultimate success somehow negates the waiver inherent in that tactical decision.[6] The court will thus allow discovery of the interview memoranda.

---

[6] The defendant claims that, "[w]hen dismissing the Plaintiff's claims for harassment and discrimination, the Court did not rely on the investigation or consider the investigation – the Court dismissed those claims based on Plaintiff's own admission." (Docket No. 109 at 9.) But the key inquiry is whether the City made the tactical decision to rely on Berexa's investigation in raising an affirmative defense. The fact that Reitz later dropped her claim is irrelevant to this determination. Furthermore, it is possible that the City's *Faragher-Ellerth* defense contributed to Reitz's decision to drop the claim.

10

Regardless of the City's waiver, however, only the "fact" work product created by Berexa and her associate – that is, the portions of the documents memorializing the information gathered by the investigators – is discoverable. Sections of the interview memoranda that reflect the lawyers' mental impressions, opinions, conclusions, judgments, or legal theories are not relevant to the plaintiff's remaining retaliation claim, nor will they lead to the discovery of relevant information. This "opinion" work product has no bearing on the issues of Reitz's work performance, the discipline she faced before filing her internal complaint, or any other aspect of Reitz's current case. Because it falls outside the scope of discovery under Federal Rule of Civil Procedure 26, the court will allow the City to redact this "opinion" work product from the documents.

## CONCLUSION

For all of the above reasons, the court will grant the plaintiff's Motion to Compel. The court will allow the defendant to submit, for *in camera* review, its proposed redactions of "opinion" work product.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

11